UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASE MATTHEW LENTZ,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID BERNHARDT, Secretary of the Interior,<br><br>    Defendant. | No. 2:21-cv-0071 DAD DB PS<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Chase Matthew Lentz is proceeding in this action pro se. This matter was referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1). Pending before the undersigned are defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and motion to strike plaintiff's sur-reply. (ECF Nos. 22 & 27.) Having reviewed the parties' briefing, and for the reasons stated below, the undersigned will recommend that defendant's motion for summary judgment be granted.

## BACKGROUND

Plaintiff, proceeding pro se, commenced this action on January 14, 2021, by filing a complaint and a motion to proceed in forma pauperis. (ECF Nos. 1 & 2.) Therein, plaintiff alleges that plaintiff was "employed as a permanent GS-11 Botanist at the Department of Interior Bureau of Land Management Field Office in Redding, CA," beginning on October 15, 2006.

1  (Compl (ECF No. 1) at 8.¹)  Plaintiff is a "qualified individual with disabilities who . . . never had
2  a performance rating below fully successful."  (Id.)

3        Plaintiff filed multiple complaints with the Equal Employment Opportunity Commission
4  ("EEOC") between March 23, 2012, and January 15, 2015, regarding harassment, discrimination,
5  and/or retaliation.  (Id.)  Thereafter, defendant subjected plaintiff to adverse employment actions
6  including being passed over for supervisory detail, being subject to disciplinary action, receiving
7  lower performance evaluations, and changes to the terms and conditions of employment.  (Id. at
8  15-25.)

9        In this regard, the complaint alleges that plaintiff was denied a performance award for the
10 year 2011.  (Id. at 24.)  In May of 2012, plaintiff requested to be considered for a vacant
11 Supervisory Natural Resources Specialist position in the Redding Field Office.  (Id. at 15-16.)
12 Despite repeated applications plaintiff was not selected for the position.  (Id.)  In 2013 and 2014,
13 plaintiff was given lower performance evaluations.  (Id. at 19.)  On May 15, 2014, plaintiff was
14 issued a Letter of Reprimand.  (Id. at 17.)  Plaintiff was latter threated with, and received, a
15 suspension.  (Id. at 18.)  Around this time the defendant improperly disclosed plaintiff's medical
16 information "by filing it in [a] local personnel file."  (Id. at 24.)

17       On multiple occasions in 2013 and 2014, plaintiff requested reasonable accommodations
18 as a qualified individual with a disability.  (Id. at 20.)  Plaintiff's requests were not granted and
19 instead plaintiff was punished for making those requests.  (Id. at 20-21.)  Plaintiff resigned on
20 February 13, 2015.  (Id. at 22.)  Thereafter, defendant repeatedly gave plaintiff inaccurate and
21 negative employment references.  (Id. at 23.)

22       Pursuant to these allegations the complaint alleges claims for failure to promote, failure to
23 accommodate, unequal treatment, and retaliation in violation of Title VII of the Civil Rights Act,
24 the American with Disabilities Act, and the Rehabilitation Act.²  (Id. at 3-4.)  Defendant filed an

---

26 ¹ Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.
27

28 ² Identifying the exact contours of all of plaintiff's claims and allegations is made difficult by the vague and conclusory nature of many of the complaint's allegations and claims.

answer on April 26, 2021.  (ECF No. 8.)  On June 10, 2022, defendant filed the pending motion for summary judgment.  (ECF No. 22.)  Plaintiff filed an opposition on June 16, 2022.  (ECF No. 24.)  Defendant filed a reply on June 27, 2022.  (ECF No. 25.)  On July 1, 2022, plaintiff filed a sur-reply.  (ECF No. 26.)  Defendant filed a motion to strike plaintiff's sur-reply on July 15, 2022.[3]  (ECF No. 27.)

**STANDARDS**

**I.     Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

---

[3] Defendant's motion to strike notes that the filing of a sur-reply is not authorized by the Federal Rules of Civil Procedure or the Local Rules.  See Fed. R. Civ. P. 12; Local Rule 230.  Nonetheless, in light of plaintiff's pro se status, and having found that that defendant's motion for summary judgment should be granted, the undersigned has considered the sur-reply in evaluating defendant's motion for summary judgment.  The undersigned will, therefore, recommend that defendant's motion to strike be denied without prejudice as having been rendered moot.

trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted). "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'" Zetwick v. County of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (quoting Reza v. Pearce, 806 F.3d 497, 505 (9th Cir. 2015)).

////

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## II.     Title VII

"Title VII exists in large part 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" Clemens v. Centurylink Inc., 874 F.3d 1113, 1115 (9th Cir. 2017) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)). To this end, "Title VII forbids certain employers from 'discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Campbell v. Hawaii Department of Education, 892 F.3d 1005, 1012 (9th Cir. 2018) (quoting 42 U.S.C. § 2000e-2(a)(1)).

## III.    The Rehabilitation Act

"The Rehabilitation Act [of 1973, 29 U.S.C. § 701 *et seq.*] was the first major federal statute designed to protect the rights of . . . the handicapped people of this country." Smith v. Barton, 914 F.2d 1330, 1338 (9th Cir. 1990). "Section 504 creates a private right of action for individuals subjected to disability discrimination by any program or activity receiving federal financial assistance including employment discrimination in such programs." Fleming v. Yuma Regional Medical Center, 587 F.3d 938, 940 (9th Cir. 2009) (citations omitted).

## IV.     Americans with Disabilities Act

"Congress enacted the ADA 'to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.'" Arizona ex rel. Goddard v.

Harkins Amusement Enterprises, Inc., 603 F.3d 666, 669 (9th Cir. 2010) (quoting 42 U.S.C. § 12101(b)(2)).  Pursuant to the ADA:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).[4]

"A person is 'regarded as' having a disability 'if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'"  Scott v. Napolitano, 717 F.Supp.2d 1071, 1086 (S.D. Cal. 2010) (quoting 42 U.S.C. § 12102(3)(A)).

## DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

Defendant's statement of undisputed facts—supported by citation to declarations, exhibits, and transcripts from plaintiff's deposition—evidences, in relevant part, the following.  The other employees in plaintiff's unit who received the same rating as plaintiff also did not receive a performance award for 2011.  The only employees in plaintiff's unit who received a performance award had higher performance ratings that plaintiff.  (Def.s' SUDF (ECF No. 22-2) 1.[5])

Redding Field Office Manager Jennifer Mata selected Rebecca Carr-Wong for the Supervisory Natural Resources position.  Carr-Wong was the top candidate who had more National Environmental Policy Act ("NEPA") knowledge and supervisory experience than the other candidates.[6]  (Id. at 2.)

---

[4] A claim for violating the ADA cannot be brought against the federal government.  See Whaley v. U.S., 82 F.Supp.2d 1060, 1061 (D. Neb. 2000).  Instead, "the Rehabilitation Act provides . . . the exclusive remedy, for a federal employee's disability discrimination claim if the employee first exhausts her administrative remedies."  Jordan v. Evans, 404 F.Supp.2d 28, 30 (D. D.C. 2005).

[5] Citations here are to defendant's specific numbered undisputed fact asserted.

[6] Plaintiff's duties included preparing documents for review and approval to satisfy the requirements of NEPA, which requires government agencies to consider the environmental impacts of possible actions.  (Def.'s MSJ (ECF No. 22-1) at 9.)

6

Mata issued Lentz a Letter of Reprimand after concluding Lentz had engaged in serious misconduct by authorizing grazing without adequate NEPA documentation and without approval from a supervisor and the Field Office Manager. Sara Acridge, Lentz's supervisor, issued Lentz a Notice of Proposed 14-day Suspension based on incidents of Lentz acting outside his authority and engaging in unbecoming conduct. Mata imposed the 14-day suspension in a written decision that upheld four out of five acting-outside-the-scope and four out of six conduct-unbecoming allegations. (Id. at 3-5.)

Northern California District Manager Nancy Haug assigned Northern California Associate District Manager Dereck Wilson to work with Lentz on the reasonable accommodation process. Lentz was given the Department of the Interior Department Manual Chapter "Reasonable Accommodation for Individuals with Disabilities," and forms requesting further information. Wilson met with Lentz as part of the interactive process and discussed the nature of Lentz's disability and the reasons for his proposed accommodations. Wilson and Haug suggested telework as an accommodation. (Id. at 6-8.)

Because Lentz's reasonable accommodation request also stated a hostile work environment allegation, Haug asked for an administrative inquiry into the allegations. Employee Relations Specialist Kip Stover conducted an administrative investigation into Lentz's hostile work environment allegations. After interviewing witnesses and gathering documents, Stover produced an 82-page investigation summary which determined that there was no evidence of a hostile work environment. (Id. at 11-12.)

Mata and Acridge gave references for Lentz that they believed were accurate and fair. (Id. at 9.)

**PLAINTIFF'S OPPOSITION**

Local Rule 260(b) requires a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's statement of undisputed facts and (2) expressly admit or deny each fact. Under that provision the party opposing summary judgment is also required to cite evidence in support of each denial. Here, plaintiff's opposition has complied with Local Rule

////

260(b). Rather than recreating every disputed fact the undersigned will discuss plaintiff's relevant denials in analyzing defendant's motion for summary judgment below.

## ANALYSIS

**I.   Exhaustion**

"In order to bring a Title VII claim in district court, a plaintiff must first exhaust her administrative remedies." Sommatino v. U.S., 255 F.3d 704, 707 (9th Cir. 2001). Claims brought pursuant to the Rehabilitation Act must also be exhausted. See Leong v. Potter, 347 F.3d 1117, 1121 (9th Cir. 2003) ("The district court properly held that Leong was required to exhaust his administrative remedies with the EEOC before pursuing his Rehabilitation Act claim in district court."). A plaintiff exhausts their "administrative remedies by filing a charge with the EEOC . . . and receiving a right-to-sue letter." Scott v. Gino Morena Enterprises, LLC, 888 F.3d 1101, 1106 (9th Cir. 2018).

The court only has jurisdiction over "charges of discrimination that are like or reasonably related to the allegations made in the EEOC charge, or that fall within the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Deppe v. United Airlines, 217 F.3d 1262, 1267 (9th Cir. 2000) (quotation omitted). "We 'consider [a] plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.'" Freeman v. Oakland Unified School Dist., 291 F.3d 632, 636 (9th Cir. 2002) (quoting B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1100 (9th Cir. 2002)).

"[T]he inquiry into whether a claim has been sufficiently exhausted must focus on the factual allegations made in the charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Freeman, 291 F.3d at 637.

> In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court

////

8

>should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.

B.K.B., 276 F.3d at 1100.

Here, in support of the motion for summary judgment defendant has submitted plaintiff's affidavit's given in the EEOC investigation into plaintiff's claims dated September 14, 2012. (Boesch Decl. (ECF No. 22-3) at 2.) Therein, plaintiff solemnly affirms to presenting just two issues: (1) whether plaintiff was discriminated against based on race and color in being denied a performance award on March 20, 2012; and (2) whether plaintiff was discriminated against based on race and color when being denied supervisory duties on March 26, 2012. (Boesch Decl. (ECF No. 22-3) at 4.) Plaintiff explains that the denial of supervisory duties occurred when plaintiff "asked Francis Berg to . . . officially be designated as . . . supervisor" of "a few seasonal people that work for [plaintiff] and a few students[.]" (Id. at 7.) Plaintiff later alleged a claim of retaliation for prior EEO activity. (Id. at 12.)

As a result of plaintiff's charges, the agency's October 26, 2018 decision investigated 3 claims: (1) whether plaintiff was discriminated against based on race and color in being denied a performance award on March 20, 2012; (2) whether plaintiff was discriminated against based on race and color when being denied supervisory duties on March 26, 2012; and (3) whether plaintiff suffered retaliation for prior EEO activity. (Id. at 12-57.) As such, it is these three claims that plaintiff has exhausted.

Moreover, it cannot be said that plaintiff's claims of failure-to-promote, disability discrimination for failure to accommodate, giving poor references, and disclosure of medical information are like or reasonably related to the exhausted claims, as they concern different basis of discrimination, different dates, different perpetrators, etc. For example, plaintiff's failure-to-promote claim concerns the denial of a Supervisory Natural Resources Specialist Detail plaintiff applied for "from June through September 2012." (Compl. (ECF No. 1) at 16.) The poor references allegedly occurred between March of 2015 and September of 2015. (Id. at 23-24.) And the disability discrimination allegations are entirely unlike plaintiff's claims related to race and color.

1    Accordingly, the undersigned finds that plaintiff's failure-to-promote, disability
2 discrimination, and poor reference claims are unexhausted.[7] Defendant's motion for summary
3 judgment as to these claims, therefore, should be granted. See Chew v. City and County of San
4 Francisco, 714 Fed. Appx. 687, 691 (9th Cir. 2017) ("Because Plaintiff failed adequately to
5 disclose to the EEOC and the DFEH the claims advanced here, he failed to exhaust his
6 administrative remedies. This barred his Title VII and FEHA claims, and warranted summary
7 judgment for Defendants."); Mayo v. Recycle to Conserve, Inc., 795 F.Supp.2d 1031, 1046 (E.D.
8 Cal. 2011) ("The court finds that an investigation into whether plaintiff was terminated to retaliate
9 against plaintiff for engaging in protected activity could not 'reasonably be expected to grow out
10 of the charge' that defendant terminated plaintiff because of his race.").

## II.  FY 2011 Performance Award

Plaintiff argues that plaintiff "did not receive an award for my FY2011 'superior' performance rating." (Compl. (ECF No. 1) at 24.) According to the complaint, plaintiff "was the only brown (color) person of African American (race) descent in [the] work unit and among similarly situated employees[.]" (Id.) To prevail on a disparate treatment claim of race based discrimination, plaintiff "must first establish a prima facie case by showing that: (1) she belongs to a protected class, (2) she was qualified for the position in question, (3) she was subject to an adverse employment action, and (4) similarly situated individuals outside her protected class were treated more favorably."[8] Campbell, 892 F.3d at 1012 (citing Chuang v. Univ. of Cal. Davis, 225

---

[7] The undersigned notes that even if these claims had been exhausted, defendant has submitted evidence establishing that plaintiff was not promoted for a legitimate, non-discriminatory, non-retaliatory reason, specifically that the candidate selected was more qualified. (Mata Decl. (ECF No. 22-7) at 5-6.) That defendant engaged in the interactive process and offered plaintiff a reasonable accommodation. (Wilson Decl. (ECF No. 22-9) at 1-6.) And that plaintiff was given essentially positive references. (Acridge Decl. (ECF No. 22-4) at 315-16; Mata Decl. (ECF No. 22-7) at 183.)

[8] "Liability in a disparate-treatment case depends on whether the protected trait [] actually motivated the employer's decision. By contrast, disparate-impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003). Disparate impact claims focus "on statistical disparities, rather than specific incidents, and on competing explanations for these disparities." Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988). The complaint does not allege a disparate

F.3d 1115, 1123 (9th Cir. 2000)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) ("The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination.  This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.").

In support of their motion for summary judgment, defendant has offered the declaration of Jennifer Mata, currently the Field Office Manager for the Department of the Interior, Redding Field Office.  Mata declares that for fiscal year 2011, only two employees received performance awards.  (Mata Decl. (ECF No. 22-7) at 19.)  Both of those employees had higher performance ratings than plaintiff.  (Id.)  Moreover, Mata declares that no employee with ratings equal to plaintiff received a performance award.  (Id.)  Mata has also provided exhibits in support.  (Id. at 189-198.)

In opposing defendant's motion, plaintiff asserts that employee Walter Herzog "received an award in FY 2011 even though he had the same rating as" plaintiff.  (Pl.'s Opp.'n (ECF No. 24) at 16.)  The evidence submitted by defendant, however, establishes that Herzog received higher performance ratings than plaintiff.  (Mata Decl. (ECF No. 22-7) at 198.)  Plaintiff also asserts that "Brennan Garrlets . . . received an awards (sic) earlier that year, but the Agency omits his rating from the list."  (Pl.'s Opp.'n (ECF No. 24) at 16.)  Plaintiff, however, has provided no evidence in support of this assertion.

Accordingly, the undersigned finds that plaintiff has failed to establish a dispute of material fact with respect to this claim and recommends that defendant's motion for summary judgment be granted.

////

////

---

impact claim, nor has plaintiff provided any statistical evidence.

11

### III. Reprimand and Suspension

The complaint alleges that plaintiff "was punished without warning or notice for alleged wrongdoing . . . including a Letter of Reprimand . . . a Notice of Proposed Suspension . . . and a Decision to Suspend[.]" (Compl. (ECF No. 1) at 8.) According to the complaint "[t]hese were acts of retaliatory harassment . . . for prior EEO activity[.]" (Id. at 8-9.) "Title VII . . . forbids retaliation by employers against employees who report workplace race or gender discrimination." Crawford v. Metropolitan Government of Nashville and Davidson Cnty., Tenn., 555 U.S. 271, 273 (2009). "A plaintiff may establish a prima facie case of retaliation by showing that (1) he engaged or was engaging in activity protected under Title VII, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action." Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987).

Here, there is no dispute that plaintiff engaged in protected activity by filing EEO complaints and that plaintiff was subjected to an adverse employment decision as the result of reprimand and suspension. Defendant, however, has proffered evidence establishing that there was no causal link between the protected activity and the adverse employment action.

In this regard, on May 15, 2014, Field Manager Jennifer Mata issued plaintiff a Letter of Reprimand for acting outside the scope of plaintiff's authority and conduct unbecoming after discovering that plaintiff had authorized goat grazing on BLM land without authorization or NEPA supporting documents placing the agency at risk for litigation. (Mata Decl. (ECF No. 22-7) at 10, 71-82.)

On November 13, 2014, Supervisory Resources Management Specialist Sara Acridge issued plaintiff a Notice of Proposed 14-Day Suspension ("Notice"). (Acridge Decl. (ECF No. 22-4) at 129.) The Notice alleged that plaintiff again acted outside the scope of authority and engaged in conduct unbecoming. (Id.) The letter detailed numerous problematic behaviors including, extending an intern's contract and directing an intern to work on a regularly scheduled day off. Informing an external partner that plaintiff would be traveling without actually receiving approval to travel. Accusing Acridge of punishing plaintiff by keeping already established schedules in place. Making unprofessional comments about work Acridge assigned plaintiff.

Threatening to step down from an advisory committee after being given direction as to how to prioritize workload. (Id. at 129-37.) The Notice was supported by substantial documentary evidence. (Id. at 145-271.)

The Notice was submitted to Mata for determination and plaintiff was provided an opportunity to respond. Plaintiff provided a written and oral reply to Mata. (Mata Decl. (ECF No. 22-7) at 166.) On February 10, 2015, Mata issued a Decision on Proposed Suspension. (Id.) After review of the Notice, its supporting documentation, and plaintiff's response, Mata found that plaintiff had engaged in misconduct supporting the charges of acting outside the scope of authority and conduct unbecoming. (Id. at 180.) Accordingly, plaintiff was suspended for 14 days. (Id.)

In opposing defendant's motion for summary judgment, plaintiff asserts the conclusory argument that plaintiff "was punished . . . because of engaging in EEO activity."[9] (Pl.'s Opp.'n (ECF No. 24) at 17.) However, "[t]he mere act of filing an EEOC complaint does not render illegal all subsequent disciplinary actions taken by the" employer. Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1390 (8th Cir. 1988). "Employers retain, as they always have, the right to discipline or terminate employees for any legitimate, nondiscriminatory reason." Glover v. South Carolina Law Enforcement Div., 170 F.3d 411, 414 (4th Cir. 1999).

The complaint also alleges that plaintiff was retaliated against by being subjected to "Lower Performance Evaluations" in 2013 and 2014. (Compl. (ECF No. 1) at 19-20.) However, defendant has produced evidence establishing that for those years plaintiff received a "Fully Successful" rating. (Wong. Decl. (ECF No. 22-10) at 43; Kuntz Decl. (ECF No. 22-6) at 35.) Plaintiff admits that a rating of "Fully Successful" is a good performance rating. (Pl.'s Opp.'n (ECF No. 24) at 22.) Although plaintiff asserts that the defendant failed to follow Agency policy in conducting plaintiff's evaluation, plaintiff has failed to establish that plaintiff suffered an adverse employment action as a result of receiving a Fully Successful performance rating. See

---

[9] Plaintiff appears to be arguing that defendant's proffered reasons for discipline were pretextual. However, "mere temporal proximity is generally insufficient to show pretext." Brooks v. Capistrano Unified School Dist., 1 F.Supp.3d 1029, 1038 (C.D. Cal. 2014).

Lyons v. England, 307 F.3d 1092, 1118 (9th Cir. 2002) ("Tate does not allege that NADNI management has either relied upon the 'fully successful' evaluations in making a further employment decision adverse to Tate or published these evaluations by making them available to other potential employers."); Steiner v. Showboat Operating Co., 25 F.3d 1459, 1466 (9th Cir. 1994) ("Steiner has established neither that her evaluation was discriminatory or retaliatory, nor that it constitutes the kind of 'intolerable' act that would force an employee to resign").

Accordingly, the undersigned finds that plaintiff has failed to establish a prima facie case with respect to these allegations and recommends that defendant's motion for summary judgment also be granted as to these claims.

## IV. Hostile Work Environment

It appears that plaintiff's complaint attempts to assert a hostile work environment claim. (Compl. (ECF No. 1) at 22-23.) "A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000). Such a claim "requires the existence of severe or pervasive and unwelcome verbal or physical harassment because of a plaintiff's membership in a protected class." Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1109 (9th Cir. 1991), abrogated on other grounds by statute as stated in Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1041 (9th Cir. 2005).

"Workplace conduct is not measured in isolation; instead, 'whether an environment is sufficiently hostile or abusive' must be judged 'by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Clark County School Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (quoting Faragher v. Boca Raton, 524 U.S. 775, 787-788 (1998)). "The working environment must both subjectively and objectively be perceived as abusive." Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1527 (9th Cir. 1995). "[T]he objective severity of harassment

////

should be judged from the perspective of a reasonable person in the plaintiff's position[.]" Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998).

Here, plaintiff has provided a list of alleged wrongful conduct that plaintiff asserts "negatively affected the terms and conditions of [plaintiff's] employment and [] work environment." (Compl. (ECF No. 1) at 23.) Even assuming *arguendo* that the allegations are true, the conduct plaintiff describes if far from severe or persuasive. Nor does it appear discriminatory or abusive.

In this regard, plaintiff complains about "the removal of my government credit card purchase authority," the reprimands addressed above, "changes to my Saturday working policy," and the loss of interns. (Compl. (ECF No. 1) at 22-23.) This conduct, even taken in total, does not come close to creating a hostile work environment.[10] See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("conduct must be extreme to amount to a change in the terms and conditions of employment"); Chamat v. Geithner, 381 Fed. Appx. 728, 730 (9th Cir. 2010) (no hostile work environment claim for "negative comments related to [plaintiff's] job performance").

Accordingly, the undersigned finds that defendant's motion for summary judgment should also be granted as to this claim.

## CONCLUSION

Given the evidence presented by the parties on summary judgment, there does not appear to be even a scintilla of evidence that could support the claims asserted in this action. See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment); Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) ("a mere scintilla of evidence will not be sufficient to defeat a properly supported

////

---

[10] Moreover, defendant has produced evidence that defendant conducted an administrative investigation into plaintiff's hostile work environment allegations. (Stover Decl. (ECF No. 22-8) at 1.) Defendant produced an 82-page investigation summary finding "no evidence of a hostile working environment." (Id. at 4-86.)

motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint").

In the absence of any evidence of a disputed issue of material fact regarding the claims analyzed above, the undersigned finds that defendant is entitled to summary judgment in its favor on all the complaint's claims. After adequate time for discovery, plaintiff has failed to make a showing sufficient to establish the existence of any disputed issue of fact regarding elements essential to plaintiff's claims and on which plaintiff would bear the burden of proof at trial.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's June 10, 2022 motion for summary judgment (ECF No. 22) be granted;

2. Defendant's July 15, 2022 motion to strike (ECF No. 27) be denied without prejudice as having been rendered moot;

3. Judgement be entered for defendant; and

4. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 20, 2022

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.pro se\lentz0071.msj.f&rs

17